Mr. Justice Cox
delivered the opinion of the Court:
On June 8, 1884, two papers pasted together were offered for probate in the Orphan’s Court as the last will and testament of David Mclntire, recently deceased. One of them has the appearance of a formal will. It bears date, as presented, on January 7, 1890. In it the testator bequeaths-to his nephews and nieces as follows: “ That is to say, from July. 1, 1854, to the opening of or reading of this paper, one thousand three hundred and fifty dollars and sixty-four cents ($1,350.64), is to be calculated at 6 per cent, interest; that-amount, whatever it may be, is to be given to each of my brother Edwin’s children. The remainder, if any, is to be equally divided between my brother Edwin’s and Charles’ children.” I may state that at that time the remaining family of Edwin consisted of one son, Edwin A. Mclntire, and four daughters, so that the effect was that five-sixths of the estate went to the children of Edwin and one-sixth to Charles, junior, the son of Charles, the brother. There was no provision for the brother Charles.
The other paper bearing date January 1, 1880, is a disposition of some trifling matters of property therein described. It has the appearance of detached memoranda made at different times and signed blithe testator in different places. Pie says, “ at my death, or after, I wish my body to be taken to Philadelphia and deposited in the ‘Macphelah Cemetery ’ vault with the cover unscrewed and' remain in that condition until friends or relatives are satisfied, and then deposited in the lot with the other graves, and provided ‘ Macphelah Cemetery ’ should be sold and *487 a disposition made of those in the family vault by the-family, then the instruction as stated above is to follow that disposition. David McIntire, or Tire. To provide for. the demise when it should come to the great proprietor of all my clothing is to go to those that they may fit. If there is more than one a rough estimate is to be made and divided so recipients may have a word and be satisfied, nephews, first. I do not leave them as a legacy, they must take them as their own. To avoid trouble, i. e., not of any account whatever. To those that I appoint to settle, see that those things are carried out. D. Mclnt-. You' must act understandingly ; there will be no money in bank. To give satisfaction to all interested, provided that surroundings should be disturbed. That is the names that I have written down with the articles attached to them. It is my opinion that they take them as their own. David McIntire.” On the margin, “ If the articles are worth having.” That would seem to indicate that this was really not intended as a will, but a gift inter vivos, without delivery. Then follows: “ To-Lizzie McIntire, test. As she has raised more boys, hence my chest, with all my clothing or wearing apparel, coat, vest, pants, shirts, drawers, socks, etc. The large vegetable shawl, the vegetable studs, goes with the shirts. The sewing apparatus. The five glass stopper vials. To Emma Y. the writing desk, with all the writing-apparatus, pens, ink, paper, envelopes, pencils. The cotton muffler, red silk handkerchief, and gold studs. To Charles McIntire, Jr., the telescope gun and one pocket knife, AVebster Dictionary and pocket book.' A linen pocket handkerchief to Notny. The satchel and strap, Martha, Addyliue, Emma.” The appearance of the paper indicates that something here was torn .off.
These papers were admitted to probate and letters of administration wfith the will annexed were issued to Edwin A. McIntire, and afterwards Charles McIntire, the brother, filed a caveat against the will, and'issues were framed and *488 sent to the Circuit Court to be tried. The issues were, first: “Was the paper writing, as now probated, and now bearing date January 7, 1880, purporting to be the last will and testament of said .David Mclntire, deceased, executed by said David Mclntire in due form, as required by law?
“ 2. Was the said David Mclntire at the time of the alleged execution of the said paper writing, as now probated, and now bearing date January 7, 1880, of sound and disposing mind, capable of making a valid deed or contract ?
“ 3. Were the contents of said paper writing as now probated, and now bearing date of January 7,1880, read to or by the said David Mclntire, or otherwise made known to him at or before the execution thereof?
“ 4. Was the said paper writing, as now probated, and now bearing date January 7, 1880, executed by said David Mclntire, under the undue influence or by the fraud of any person or persons ?
“ 5. Is the said paper writing, as now probated, and now bearing date January 7, 1880, the complete and final last will and testament of the said David Mclntire ?
“6. Has the said paper writing, purporting to be the said last will and testament of the said David Mclntire, deceased, probated on the 8th day of April, 1884, or any part thereof, been fraudulently altered since the death of said David Mclntire, and before the probate thereof, by any person or persons to the prejudice of any of the next of kin or heirs at law of said David Mclntire ?
“7. Has the said instrument purporting to be the last will and testament of said David Mclntire, deceased, been in any respect altered since the death of said David Mclntire, and if such alterations have been made, what were the said alterations, and how were they made; were such alterations made by any party interested under said will or with the privity of any party interested under said last will?
*489 “ 8. Has the said instrument purporting to be the last will and testament of said David Mclntire, deceased, or any part thereof, been revoked ? ”
I should have stated further that on the back of this will is the following: “ The judges of Courts lay down as a rule in law that what a person leaves in his handwriting with his name attached is his will, and it is the law. The law requires no particular formality in action or words to constitute a valid will or request. David Mclntire.”
The will relates only to personal property, so that the testator was right about that.
At the trial of these issues, some twenty exceptions were taken, as appears by the record, and the last one is to the general instruction of the court to the jury to find a verdict in favor of the caveatees, and it is contended that that was not a proper instruction in the light of the testimony.
The contention on the part of Charles; the brother, who is caveator, is, first: That alterations were made in these papers by Edwin A. Mclntire for a fraudulent purpose. The first alteration alleged was in the date of the so-called will. I call this second paper a codicil, for convenience, because it has been so denominated by the parties. It is said that the original date of the will was January 1, and that .was changed to January 7, and that the words “of the City of--” were changed into “ of this city.” Then it is claimed that the other paper, so-called codicil, was dated January 1, 1884, and that was changed to January 1,1880, for the purpose of making that appear to be the prior document. It is further claimed that the second paper was mutilated; that something was torn off from the bottom, and it -is contended that the jury are authorized to infer from those circumstances that it contained a revocation of thp will and therefore it was to the interest of Edwin A. Mclntire, that this, which was the later paper, should appear to be the prior one. It is claimed that this mutilation is ground on which the court and jury would be justified *490 in inferring that that paper contained a revocation of the will. Now, as to the evidence on this question: It appears that the testator lived with his grandneice, Mrs. Galliher,. and that upon his death Edwin A. Mclntire, his nephew and the uncle of Mrs. Galliher, was sent for and came to the house, and the trunk or chest of the deceased was openéd, out of which were taken these two papers. They were read over aloud in the presence of four parties, Edwin A. Mclntire, Emma B. Mclntire, sister of Mrs. Galliher, Mrs. Galliher and her husband. Her husband made a full copy of the will and made a memorandum of the items in the other paper. At that time, Mrs. Galliher and her sister thought they were among the beneficiaries of the will; that they came under the description of neices. The paper was then taken by Edwin A. Mclntire and afterwards filed in the-Orphan’s Court. After some time, Mrs. Galliher became apprised that she was not one of the beneficiaries under the will, and that and other circumstances led to an estrangement between her and her uncle, and it was said that she went and examined the papers in the Orphan’s Court and found that there had been an alteration in the papers; that the paper, the so-called codicil, which was really dated the 1st day of January, 1884, had been changed to January, 1880, and furthermore, it had contained something about the-old man’s spectacles, or glasses and the gift of them to whoever wanted them, and she did not find that in the paper as it now stands. She further testifies that the other paper, the will, was dated January 1, 1880, and she now finds it has been altered to January 7. So far, her husband corroborates her; that is, they testify to the same general effect, that the so-called codicil bore date the 1st of Januaiy, 1884, and the other, the will, January 1, 1880. Mrs. Galliher further testified that she called her uncle’s attention to these alterations and that he admitted them and said that his only object was that the will should bear the same date with the so-called codicil, and hence the change; and that *491 the change “ of the city of” to “this city” would make this the domicile of the decedent and would save the trouble of going to Philadelphia to take out letters on his estate. Edwin'A. McIntire admits that the paper was altered from its original date, but he says it was in that condition when it came into his possession and that he took it from Mrs. Galliher’s to his own home, and his sister testifies that he brought the paper from the Galliher’s to his own house and she made a copy of it immediately, and that it then bore the same appearance that it presents now. So it appears that there is a conflict of testimony as to these alleged alterations. Now, the first thing which would strike anybody is,, that these alterations, if they were- made, were perfectly immaterial. The change of the date of the will from January 1, to January 7, had no effect in itself at all, nor did the change of the other paper from 1884 to 1880.
The next point of contention is over the mutilation of the paper, called a codicil, by which the gift of the old man’s spectacles is left out, the gift of them to whoever would take them. That is also an immaterial alteration, and it certainly could not affect.the sisters of E. A. McIntire, who do not appear to have had anything to do with it, even were it agreed that the mutilation was made by E. A. McIntire.
It cannot be conceived what object was accomplished by it unless something further appears, of which I shall speak presently, and if that is all that is presented, such alleged alterations could not be allowed to destroy the will, even as far as E. A. McIntire is concerned, and certainly not so far as the bequests are made in favor of his sisters who took no part in this alteration, so far as it appears. An immaterial alteration of that sort in our judgment does not affect the validity of the will unless something further appears.
Now, it is claimed by the caveators that from this apparent mutilation it is fair to infer that there was a clause,, of revocation in that paper, and it was the object of E. A. *492 Mclntire to get rid of it. It appears that both of these papers were opened and read in the presence of four persons, Mrs. Galliher, her husband and sister, and E. A. Mclntire. Now, Mrs. Galliher and her sister supposed that they were beneficiaries under the will, and if there had been anything about a revocation in that part of the will said to have been torn off, certahily they would have not overlooked it. The husband of Mrs. Galliher took a memorandum of the items and both of them were on the stand. They-were not asked if the part torn was a clause of revocation, and they did not testify that there was anything of the sort in the paper. The husband did not'even produce the memorandum which he took, and which is to be supposed to be in his possession. As they are absolutely silent on the subject of a revocation, it is equivalent to testimony that no such clause of revocation existed, and really the jury was asked to infer the existence of a clause of revocation, only from the circumstance that there is a mutilation of the paper, almost in the face, I might sajr, of testimony that there was no such clause. The ■only thing that was testified to as having been stated in that paper which is not now in it, was the mere disposition of the old man’s glasses to whoever might want them.
If the jury had found against the will on that evidence, it seems to me that it would have been the duty of the ■court to set the verdict aside. Three witnesses, who take special pains to show how all the contents of these papers were impressed upon their memories, said that there was something in the so-called codicil about the testator’s glasses that they did not find after it had been filed in the Probate ■Court, but they do not intimate that there was a single word in it about the revocation of the will. The fact that they do not, it seems to us, is equivalent almost to saying that there was no such revocation and yet the court were ■asked to authorize the jury to infer such a revocation in the face of this proof by the caveator.
Now, we say that we think the judge was perfectly right *493 in instructing the jury to find for the caveatees on issue No. 6 : “Has the said paper writing .purporting to be the said last will and testament of the said David Mclntire, deceased, probated on the 8th day of April, 1884, or any part thereof, been fraudulently altered since the death of said David Mclntire and before the probate thereof, by any person or persons to the prejudice of any of the nextof kinorheirsat law of said David Mclntire.” We cannot conceive that any fraud can be predicated of the alterations that were made, as they are entirely immaterial. Such being our opinion, it disposes also of the last issue, “ Has the said instrument purporting to be the last will and testament of said David Mclntire, deceased, or any part thereof, been revoked.”
Now, as to the other issues: First. “ Was the paper writing as now probated and now bearing date January 7, 1880, purporting to be the last will and "testament of said David Mclntire, deceased, executed by said David Mclntire in due form as required by law.” That refers simply to the question of handwriting. It may be said that there is some evidence in the case against the theory that it was in the handwriting of David Mclntire, though a majority of the witnesses testify that the will, as it is called', was in his handwriting. The witnesses on both sides agree that the other paper was in his handwriting. The caveator alone says that he does not thinlcdhe will is, from the general look of it. Of course he is interested in the matter. He admits that the other paper is in his brother’s handwriting, but no witness professes to see any difference in the handwriting of the two papers. If there is any evidence at all that it is not in David’s handwriting, it is so trivial that it wrnuld not justify a court in ordering a new trial on this issue.
As to the second issue, there was no question made at all.
The third issue was, “ were the contents of said paper writing,” etc., known to the testator. ' There is no question about that because it was in his handwriting and found in his trunk.
*494 “ Was the said paper writing,” etc., executed under undue influence. There is no controversy over that.
“Is the said paper writing as now probated and now bearing date January 7, 1880, the complete and final last will and testament of the said David Mclntire.” We think that there was no error in the court’s ruling on that issue, and that it was properly found.
As to the seventh issue, it may be said that there is evidence tending to show that E. A. Mclntire did alter the paper; that is to say, by changing it to a different date,which it now bears, and that it went through his hands, with one date and came out of his hands with the present date.
Perhaps that is true, and perhaps it is not the proper thing to do; yet the court instructed the jury to find that there was no alteration. But if there was an alteration, we conceive that it was so trivial that it could not affect the paper or the result, and therefore no harm could be done by the supposed error in this instruction, and it furnishes no ground for a new trial. That covers all the issues.
There are nine other bills of exceptions that we do not propose to examine. We have gone over them very carefully. A great deal of evidence was offered tending to show misconduct on the pa# of E. A. Mclntire; that he failed to notify his Uncle Charles, in due time, of the death of his Uncle David, so that he could come on here, and that he did not wish him to come, and misled him as to the condition of the estate; that after the will was probated he filed false inventories, etc., omitting to charge himself with moneys received by him, etc. Some of the evidence was admitted and some excluded. We have gone over the exceptions very carefully, and in the light of the views that we have expressed we do not find any substantial error in the rulings that are excepted to; and therefore the motion for a new trial must he overruled.